## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

VIKING TECHNOLOGIES, LLC,

        Plaintiff,

    v.

SQUARETRADE INC.,

        Defendant.

C.A. No. _____

**JURY TRIAL DEMANDED**

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Viking Technologies, LLC ("Viking") hereby asserts the following claims for patent infringement of United States Patent Numbers 8,888,953 (the "'953 Patent") and 10,220,537 (the "'537 Patent" and collectively with the '953 Patent, the "Patents-in-Suit") against defendant SquareTrade Inc. ("SquareTrade"), and alleges as follows:

## NATURE OF THE ACTION

1.    This is an action for patent infringement under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq.*, seeking damages and other relief under 35 U.S.C. § 281, *et seq.*

## PARTIES

2.    Viking is a limited liability company organized and existing under the laws of the State of Nevada with its principal place of business at 103 South Valley Common, Madison, Mississippi 39110.

3.    On information and belief, SquareTrade is a corporation organized and existing under the laws of Delaware with its principal place of business at 600 Harrison Street, Suite 400, San Francisco, California 94107-1370.  SquareTrade may be served with process through its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

## JURISDICTION AND VENUE

4.      This is an action for patent infringement arising under the Patent Laws of the United States, Title 35 of the United States Code.

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because the action concerns the infringement of U.S. patents.

6.      On information and belief, SquareTrade is subject to this Court's specific and general personal jurisdiction because it conducts substantial business in the District of Delaware, directly and/or through intermediaries, including: (i) committing at least a portion of the acts of infringement alleged herein in this District, and (ii) regularly conducting or soliciting business in this District, engaging in other persistent courses of conduct in this District including maintaining continuous and systematic contacts in this District, availing itself of the privileges of doing business in this District.

7.      Venue is proper in this District under 28 U.S.C. § 1400(b) because SquareTrade is a Delaware corporation and therefore resides in this District.

## BACKGROUND

8.      The most vulnerable portion of a smart phone or tablet is the protective transparent cover which is typically made of hardened glass.  The underlying display of a smart phone or tablet which is protected by this transparent cover is one of the most expensive components in the device. In the initial years after the advent of the iPhone and Android smartphones, the repair for a display assembly with broken glass cover would involve replacement of the entire display assembly.

9.      The introduction of active-matrix organic light-emitting diode ("AMOLED") displays in smart phones and tablets in 2011 offered better display technology but at a significantly increased price.  This made replacing the entire display assembly when the glass cover broke

prohibitively expensive.  After the introduction of AMOLED displays, Assurant, Inc. ("Assurant") approached business partners Kevin Barnett and Teo Chong Teck and asked them to develop a way to repair the glass cover in the touchscreen assembly of smartphones and tablets in order to avoid replacing the entire display assembly.

10.     Messrs. Barnett and Teck designed a cutting machine and a method of using the machine to separate the glass cover from the underlying display without damaging the underlying display.  The machine uses a cutting wire in the adhesive layer between the protective layer and the underlying display.  The machine permits the height of the cutting wire to be adjusted to bring the cutting wire close to the underlying display and through the adhesive layer as the cutting wire traverses an area with broken glass. Because shards of broken glass often extend into the intermediate adhesive layer between the glass cover and the underlying display, this prevents the cutting wire from snagging those glass shards in the adhesive layer and damaging the underlying display.  Using their technique, the broken glass cover is removed from the display assembly and a replacement touchscreen assembly is manufactured using the recovered underlying display and a new protective glass cover.  This is a more efficient and, therefore, more cost-effective approach to fixing a display assembly with a broken glass cover than replacing the entire display assembly.

11.     In 2012 Messrs. Barnett and Teck formed Viking Technologies Company Limited in Hong Kong ("Viking Hong Kong") and opened a factory in China that, using the patented technology, removed the broken glass covers from approximately 10,000 devices a month.

12.     In late 2013, Assurant terminated its relationship with Viking Hong Kong.  Viking Hong Kong continued to process broken display assemblies for other customers from 2014 until 2016, but not at the consistent volume it had previously done for Assurant, and eventually ceased operating.

13.     Today, broken glass covers are the most common insurance claim and warranty claim for smartphones and tablets and almost 30 million broken display assemblies are replaced every year, resulting in a $3.4 billion annual market.     (https://www.prnewswire.com/news-releases/mobile-myths-cost-consumers-dearly-as-americans-report-spending-3-4-billion-replacing-millions-of-smartphone-screens-last-year-300753419.html, last accessed Nov. 5, 2020.) SquareTrade's infringement of the Patents-in-Suit has allowed it to capture a large share of this replacement market.

## **PATENTS-IN-SUIT**

### **Background**

14.     The '953 Patent is entitled "Method and Apparatus for Display Screen Shield Replacement" and was duly issued by the U.S. Patent and Trademark Office on November 8, 2014. Viking is the owner by assignment of the '953 Patent.  It is valid and enforceable, and was duly issued in full compliance with the Patent Laws of the United States, Title 35 of the United States Code.  A true and correct copy of the '953 Patent is attached hereto as Exhibit 1.

15.     Viking owns all substantial right, title, and interest in the '953 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement.

16.     The '537 Patent is entitled "Method and Apparatus for Display Screen Shield Replacement" and was duly issued by the U.S. Patent and Trademark Office on March 5, 2019. Viking is the owner by assignment of the '537 Patent.  It is valid and enforceable, and was duly issued in full compliance with the Patent Laws of the United States, Title 35 of the United States Code.  A true and correct copy of the '537 Patent is attached hereto as Exhibit 2.

17.     Viking owns all substantial right, title, and interest in the '537 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement.

18.     The Patents-in-Suit describe and claim a particular way of using a cutting device, such as a cutting wire, to remove the protective glass cover from a display assembly without damaging the underlying display, such that the display assembly can be remanufactured using a new protective glass cover.

19.     The claims of the Patents-in-Suit are not directed to abstract ideas and are not merely attempting to limit a method of organizing human activity or an idea itself to a particular technological environment.  The claimed technology (e.g., a method of removing a protective glass cover from a display unit having a glass cover, an electronic display portion, and an intermediate adhesive layer therebetween) are expressly directed to methods of using cutting devices, which are not abstract methods or abstract ideas.  The method of using a cutting device claimed in the Patents-in-Suit exists only in a concrete and tangible form, and the claimed inventions cannot be accomplished through pen-and-paper or the human mind.  As alleged above, the claimed methods provided a technical solution to an existing technical problem.   Accordingly, the claims of the Patents-in-Suit are not directed to an abstract idea.

20.     When viewed as a whole, the claims, including as an ordered combination, are not merely a recitation of well-understood, routine, or conventional technologies or components.  The claimed inventions were not well-known, routine, or conventional at the time of the invention and represent specific improvements over the prior art and existing systems and methods.  The claimed technology (e.g., a method of removing a protective glass cover from a display unit having a glass cover, an electronic display portion, and an intermediate adhesive layer therebetween) was not known in the prior art at the time of the invention, let alone well-known, routine, or conventional.

21.     Claim 1 of the '953 Patent recites:

A method of removing a protective glass top surface from a display unit having a glass top, an electronic display portion, and an intermediate layer therebetween, the display unit defining an axis extending along said intermediate layer, the method comprising the steps of: fixing the display unit in a carriage with the intermediate layer being exposed on all sides; aligning a cutting device in a coplanar relationship with the intermediate layer; biasing the cutting device in the intermediate layer adjacent the electronic display portion and away from the glass, driving the cutting device into the intermediate layer while moving the cutting device and display unit relative to each other along a diagonal direction relative to said display unit axis; advancing the cutting device into the intermediate layer to separate the glass top from the electronic display portion.

22.    Claim 8 of the '953 Patent recites:

A method of separating a protective glass top surface from a display unit having a glass top, an electronic display portion, and an intermediate layer therebetween, the method comprising the steps of: fixing the display unit in a carriage with the intermediate layer being exposed on all sides; aligning a cutting blade in a coplanar relationship with the intermediate layer; biasing the cutting blade in the intermediate layer immediately adjacent the electronic display portion and away from the glass by locating the guide path of the blade below the display; heating a side of the cutting blade facing away from said electronic display portion, and cooling a side of the cutting blade facing toward said electronic display portion; driving the cutting blade into the intermediate layer so that the cutting blade and display unit are moved relative to each other along an axis generally orthogonal to the cutting blade; advancing the cutting blade into the intermediate layer to separate the glass top from the electronic display portion.

23.    Claim 1 of the '537 Patent recites:

A method of removing a protective glass top surface from a display unit having a glass top, an electronic display portion, and a planar intermediate layer therebetween, the method comprising the steps of: fixing the display unit in a carriage with the intermediate layer being exposed on all sides; aligning a cutting device in a coplanar relationship with the intermediate layer; biasing the cutting device in the intermediate layer adjacent the electronic display portion and away from the glass; driving the cutting device into the intermediate layer while moving the cutting device and display unit relative to each other along an axis generally orthogonal to the cutting device; and advancing the cutting device into the intermediate layer to separate the glass top from the electronic display portion.

24.    Claim 9 of the '537 Patent recites:

A method of separating a protective glass top surface from a display unit having a glass top, an electronic display portion, and a planar intermediate layer therebetween, method comprising the steps of: fixing the display unit in a carriage with the intermediate layer being exposed on all sides; aligning a cutting wire in a coplanar relationship with the intermediate layer; biasing the cutting wire in the intermediate layer immediately adjacent

6

the electronic display portion and away from the glass by locating the guide path of the wire below the display; driving the cutting wire into the intermediate layer while moving it reciprocally therethrough so that the cutting device and display unit are moved relative to each other along an axis generally orthogonal to the cutting wire; and advancing the cutting wire into the intermediate layer to separate the glass top from the electronic display portion.

## COUNT I
## (INFRINGEMENT OF THE '953 PATENT)

25.     Viking repeats and re-alleges the allegations of Paragraphs 1–24 above as if fully set forth herein.

26.     On information and belief, SquareTrade has infringed and continues to infringe one or more claims of the '953 Patent, including but not limited to Claims 1 and 8, pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by using the patented methods of the '953 Patent in the United States without authority to remove broken glass covers from display assemblies.  SquareTrade operates phone repair and remanufacture facilities where it practices the patented method of the '953 Patent to remove the glass cover from the underlying display as part of the remanufacturing process for display assemblies for smartphones and tablets.

27.     On information and belief, SquareTrade has infringed and continues to infringe one or more claims of the '953 Patent, including but not limited to Claims 1 and 8, pursuant to 35 U.S.C. § 271(g), by selling in, offering to sell in, using in, or importing into the United States display assemblies manufactured or otherwise produced using a process that practices at least one claimed method of the '953 Patent.  SquareTrade sells, offers to sell, uses and/or imports display assemblies that are remanufactured, either in the United States or abroad, using the patented method of the '953 Patent, including by providing remanufactured display assemblies for smartphones and tablets at its mobile device repair facilities throughout the United States, and by mail-in service.

28.     SquareTrade has directly infringed the '953 Patent and is thus liable for infringement of the '953 Patent pursuant to 35 U.S.C. § 271.  Viking has suffered, and continues to suffer, damage because of SquareTrade's unlawful infringement of the '953 Patent.  Viking is entitled to recover from SquareTrade the damages adequate to compensate for such infringement, which have yet to be determined.

### COUNT II
### (INFRINGEMENT OF THE '537 PATENT)

29.     Viking repeats and re-alleges the allegations of Paragraphs 1–24 above as if fully set forth herein.

30.     On information and belief, SquareTrade has infringed and continues to infringe one or more claims of the '537 Patent, including but not limited to Claims 1 and 9, pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by using the patented methods of the '537 Patent in the United States without authority to remove broken glass covers from display assemblies.  SquareTrade operates phone repair and remanufacture facilities where it practices the patented method of the '537 Patent to remove the glass cover from the underlying display as part of the remanufacturing process for display assemblies for smartphones and tablets.

31.     On information and belief, SquareTrade has infringed and continues to infringe one or more claims of the '537 Patent, including but not limited to Claims 1 and 9, pursuant to 35 U.S.C. § 271(g), by selling in, offering to sell in, using in, or importing into the United States display assemblies manufactured or otherwise produced using a process that practices at least one claimed method of the '537 Patent.  SquareTrade sells, offers to sell, uses and/or imports display assemblies that are remanufactured, either in the United States or abroad, using the patented method of the '537 Patent, including by providing remanufactured display assemblies for

smartphones and tablets at its mobile device repair facilities throughout the United States, and by mail-in service.

32.    SquareTrade has directly infringed the '537 Patent and is thus liable for infringement of the '537 Patent pursuant to 35 U.S.C. § 271.  Viking has suffered, and continues to suffer, damage because of SquareTrade's unlawful infringement of the '537 Patent.  Viking is entitled to recover from SquareTrade the damages adequate to compensate for such infringement, which have yet to be determined.

## PRAYER FOR RELIEF

WHEREFORE, Viking respectfully requests that this Court enter judgment in its favor as follows:

a.    holding that SquareTrade has directly infringed literally and/or under the doctrine of equivalents, one or more claims of the Patents-in-Suit;

b.    holding that Viking is entitled to pre-suit damages consistent with, *e.g.*, 35 U.S.C. § 287;

c.    awarding Viking the damages to which it is entitled under 35 U.S.C. § 284 for SquareTrade's past infringement, including a reasonable royalty and lost profits;

d.    awarding Viking costs and expenses in this action;

e.    awarding Viking pre- and post-judgment interest on its damages;

f.    enjoining SquareTrade from further infringement of the Patents-in-Suit; and

g.    awarding Viking such other and further relief in law or in equity as this Court deems just and proper.

## JURY DEMAND

Viking, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any and all issues so triable by right.

Dated:  November 9, 2020

OF COUNSEL:

Mark S. Raskin
John F. Petrsoric
Michael S. DeVincenzo
Elizabeth Long
KING & WOOD MALLESONS LLP
500 5th Avenue, 50th Floor
New York, New York 10110
(212) 319-4755
mark.raskin@us.kwm.com
john.petrsoric@us.kwm.com
michael.devincenzo@us.kwm.com
elizabeth.long@us.kwm.com

BAYARD, P.A.

*/s/ Stephen B. Brauerman*
Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
600 N. King Street, Suite 400
Wilmington, DE 19801
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

*Attorneys for Plaintiff*
*Viking Technologies, LLC*