IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VIKING TECHNOLOGIES, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 20-1509-CFC-JLH |
| | ) |
| SQUARETRADE INC. and | ) |
| SQUARETRADEGO, INC., | ) |
| | ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATION**

Plaintiff Viking Technologies, LLC ("Plaintiff" or "Viking") filed this patent infringement suit against Defendants SquareTrade Inc. and SquareTradeGo, Inc. (collectively, "Defendants" or "SquareTrade"), alleging infringement of U.S. Patent Nos. 8,888,953 ("'953 patent") and 10,220,537 ("'537 patent"). Pending before the Court is SquareTrade's motion to dismiss Plaintiff's First Amended Complaint. (D.I. 17.)

For the reasons stated below, I recommend that SquareTrade's motion be DENIED.

**I.   BACKGROUND**

Viking filed this patent infringement action against Defendant SquareTrade Inc. on November 9, 2020. (D.I. 1.) On February 26, 2021, Viking filed a First Amended Complaint ("FAC") that added Defendant SquareTradeGo, Inc. (D.I. 14.) The FAC has two counts. Count I alleges that, "[o]n information and belief, Defendants have infringed and continue to infringe one or more claims of the '953 Patent, including but not limited to Claims 1 and 8, pursuant to 35 U.S.C. § 271(g), by selling in, offering to sell in, using in, or importing into the United States display assemblies manufactured or otherwise produced using a process that practices at least one claimed method of the '953 Patent." (D.I. 14 ¶ 27.) Count II refers to claims 1 and 9 of the '537

patent and contains similar allegations.

The '953 and '537 patents disclose methods of removing damaged glass covers from mobile phone displays so that replacement glass can be attached.[1] Claim 1 of the '953 patent recites:

> 1. A method of removing a protective glass top surface from a display unit having a glass top, an electronic display portion, and an intermediate layer therebetween, the display unit defining an axis extending along said intermediate layer, the method comprising the steps of:
> fixing the display unit in a carriage with the intermediate layer being exposed on all sides;
> aligning a cutting device in a coplanar relationship with the intermediate layer;
> biasing the cutting device in the intermediate layer adjacent the electronic display portion and away from the glass,
> driving the cutting device into the intermediate layer while moving the cutting device and display unit relative to each other along a diagonal direction relative to said display unit axis;
> advancing the cutting device into the intermediate layer to separate the glass top from the electronic display portion.

Claim 8 of the '953 patent covers a similar method, a notable difference being that it requires heating and cooling portions of the cutting blade.

Claim 1 of the '537 patent recites:

> 1. A method of removing a protective glass top surface from a display unit having a glass top, an electronic display portion, and a planar intermediate layer therebetween, the method comprising the steps of:
> fixing the display unit in a carriage with the intermediate layer being exposed on all sides;
> aligning a cutting device in a coplanar relationship with the intermediate layer;
> biasing the cutting device in the intermediate layer adjacent the electronic display portion and away from the glass;

---

[1] I attempt to describe the invention in a way that facilitates ease of understanding. In so doing, I make some generalizations. Nothing I say here should be taken as the Court's views on any current or future claim construction (or any other) issues.

> driving the cutting device into the intermediate layer while moving the cutting device and display unit relative to each other along an axis generally orthogonal to the cutting device; and
> advancing the cutting device into the intermediate layer to separate the glass top from the electronic display portion.

Claim 9 is substantially similar but refers to a cutting wire rather than a cutting device.

The FAC alleges that Defendants infringe the asserted claims "by selling, offering to sell, using and/or importing display assemblies that are remanufactured by removing the glass cover from the underlying display for display assemblies for smartphones and tablets at its phone repair and remanufacture facilities." (D.I. 14 ¶¶ 28, 38.)  The FAC further alleges that the claimed methods are the "most common method[s] of performing high volume remanufacture of display assemblies for, as examples, Samsung smartphone/tablet (e.g, Galaxy S7, Galaxy S8, Galaxy S9, Galaxy S10, Galaxy Note 7, Galaxy Note 8, Galaxy Note 9, Galaxy Note 10) display assemblies and Apple smartphone/tablet (e.g, iPhone 7, iPhone 7 Plus, iPhone 8, iPhone 8 Plus, iPhone X, iPhone XS, iPhone XR, iPad, iPad Mini) display assemblies." (*Id.* ¶¶ 34, 44.)

On March 22, 2021, Defendants moved to dismiss the FAC for failure to state a claim. (D.I. 17.)  The motion was fully briefed (D.I. 18; D.I. 19; D.I. 20) and both sides requested argument. (D.I. 22; D.I. 23.)  The Court heard argument on August 20, 2021. ("Tr. _.")

I recommend that the motion to dismiss be DENIED.

## II.     LEGAL STANDARDS

### A.     Motion to Dismiss for Failure to State a Claim

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

3

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face when the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  A possibility of relief is not enough. *Id.*  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In determining the sufficiency of the complaint under the plausibility standard, all "well-pleaded facts" are assumed to be true, but legal conclusions are not. *Id.* at 679.  "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (internal marks omitted).

"Liability under § 271(g) is subject to the same pleading standard as direct infringement under § 271(a)." *Everlight Elecs. Co. v. Bridgelux, Inc.*, No. 17-03363-JSW, 2017 WL 10447905, at *2 (N.D. Cal. Oct. 11, 2017) (quoting *Anza Tech. v. D-Link Sys., Inc.*, No. 16-1263, 2016 WL 8732647, at *4 (S.D. Cal. Nov. 11, 2016)).  According to the Federal Circuit, a complaint sufficiently pleads direct infringement when it puts the defendant "on notice of what activity . . . is being accused of infringement." *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018) (quoting *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1284 (Fed. Cir. 2013)); *see also BioMérieux, S.A. v. Hologic, Inc.*, No. 18-21-LPS, 2018 WL 4603267, at *3 (D. Del. Sept. 25, 2018).

### III. DISCUSSION

Defendants argue that the FAC should be dismissed because it (1) "does not sufficiently

4

allege that the remanufacturing process performs all steps of the[] Asserted Claims" (D.I. 18 at 8–11, 16–18); (2) "fails to attribute any specific misconduct to either Defendant" (*id.* at 12); (3) "fails to allege [Plaintiff] gave Defendants notice of infringement before filing," as required for presuit damages under 35 U.S.C. § 287(b)(2) (*id.* at 14); and (4) fails to plausibly allege infringement under § 271(g) because the accused devices are not "made" by the patented processes and are "materially changed" by subsequent processes (*id.* at 18–19). I take each argument in turn.

### A.  Sufficiency of the Infringement Allegations

Assuming the facts alleged in the FAC to be true, I conclude that Viking has barely met the low threshold for alleging infringement of the asserted patents.

The FAC alleges that Defendants are in the business of "providing remanufactured display assemblies for smartphones and tablets through their mobile device repair facilities and/or operations in the United States, and by mail-in service." (D.I. 14 ¶¶ 27, 37.) It identifies particular devices containing display assemblies that can be remanufactured using the patented process. (*Id.* ¶¶ 34, 44.) It alleges that the most frequently damaged component of mobile devices is the glass cover. (*Id.* ¶¶ 9, 14.) It alleges that the claimed methods are the most common and cost-effective methods of remanufacturing mobile display assemblies. (*Id.* ¶¶ 34, 44.) It also alleges that the accused remanufacturing process meets the limitations of claim 1 of the '953 patent and claim 1 of the '537 patent (though the FAC allegations are similar to the claim language).[2]

---

[2] *See, e.g.*, D.I. 14 ¶ 42 ("Claim 1 of the '537 Patent requires 'driving the cutting device into the intermediate layer while moving the cutting device and display unit relative to each other along an axis generally orthogonal to the cutting device.' In the accused remanufacturing processes, the cutting device is guided into the optically transparent adhesive layer ('the intermediate layer'). To cut through the adhesive layer, the cutting device is used like a saw, either in a reciprocating fashion (e.g., with the back and forth motion typical of a handsaw) or unidirectionally (e.g., with the continuous movement typical of a bandsaw). The cutting device is driven into the optically transparent adhesive layer ('the intermediate layer') and advanced through the adhesive layer by moving the cutting device and the display assembly relative to each other such that, under operator control, the movement of the centerline of the cutting wire is generally at a right angle ('orthogonal') relative to the display assembly.").

5

Those allegations are sufficient to provide Defendants notice of the grounds on which Plaintiff's claims rest. Defendants are on sufficient notice of what portion of their business—mobile device repair—and what specific products—those that have had the display assemblies repaired/remanufactured—are accused of infringement. This is not complicated technology, and the FAC sufficiently identifies the type of conduct that is alleged to be infringing.

Defendants contend that the FAC lacks sufficient facts to suggest that Defendants' products were remanufactured using the claimed method, as opposed to some other method. But there is no requirement that a plaintiff plead facts establishing that each limitation of an asserted claim is met. *Nalco*, 883 F.3d at 1350. Moreover, pleading on information and belief is permissible where, as here, the requisite facts are particularly within the defendant's knowledge and control. *Acera Surgical, Inc. v. Nanofiber Sols., LLC*, No. 20-980-CFC-JLH, 2021 WL 3187374, at *3 (D. Del. July 28, 2021), *report and recommendation adopted*, 2021 WL 3375896 (D. Del. Aug. 2, 2021); *BioMérieux*, 2018 WL 4603267, at *4 ("Plaintiffs cannot be charged with knowing, at the time they drafted their Complaint, non-public information they could only obtain after filing suit and obtaining discovery.").

Defendants point out that the FAC does not contain allegations for every claim identified in the FAC. But there is no such requirement under the law, nor would that be a basis to dismiss the entire FAC.

I do not recommend dismissal on the basis that Viking has failed to sufficiently allege infringement.

**B. Sufficiency of the Allegations Against Each Defendant**

Defendants next argue that the FAC is subject to dismissal because it fails to specify which Defendant did what. I disagree. The FAC alleges that both Defendants infringed under 35 U.S.C.

§ 271(g) by selling and importing display assemblies that were produced using the patented process. *See Acera*, 2021 WL 3187374, at *4; *Align Tech., Inc. v. 3Shape A/S*, 339 F. Supp. 3d 435, 447 (D. Del. 2018) ("[Plaintiff] is alleging that both of the Defendants did everything. The allegations must at this stage, be taken as true. Time will tell if plaintiff can prove them."). I also note that there is no requirement under § 271(g) that a single entity perform all the steps of the patented process. *Syngenta Crop Prot., LLC v. Willowood, LLC*, 944 F.3d 1344, 1363 (Fed. Cir. 2019), *cert. denied*, 141 S. Ct. 236 (2020).

        C.      **Sufficiency of Presuit Notice Allegations**

Defendants next contend that, pursuant to 35 U.S.C. § 287(b)(2),[3] Plaintiff cannot obtain presuit damages under § 271(g) because the FAC fails to allege that Defendants had presuit notice of infringement.

It is challenging to assess Defendants' argument because their papers are inconsistent about what they are asking the Court to do. Their motion, proposed order, and briefing all ask the Court to "dismiss" the FAC "with prejudice." (D.I. 17 (motion and proposed order); D.I. 18 at 19.) But Defendants' briefs and oral presentation focused entirely on their contention that Plaintiff is not entitled to "presuit damages," suggesting that Defendants really want the Court to hold that presuit damages are not available, not dismiss the whole action.[4] (D.I. 18 at 14–16; D.I. 20 at 2–3; Tr.

---

[3] Section 287(b)(2) provides that "[n]o remedies for infringement under section 271(g) shall be available with respect to any product in the possession of, or in transit to, the person subject to liability under such section before that person had notice of infringement with respect to that product." 35 U.S.C. § 287(b)(2).

[4] Defendants cite *Icon Laser Solutions, LLC v. Abercrombie & Fitch, Co.*, No. 15-3308, 2016 WL 7379138, at *3 (N.D. Tex. July 13, 2016) for the proposition that courts can "dismiss[] or limit[] relief" for a § 271(g) claim where the complaint fails to allege presuit notice. (D.I. 18 at 15.) But *Icon* is distinguishable at least for the reason that the patent in that case was expired. *Icon*, 2016 WL 7379138, *1–4. Because there could be no ongoing infringement, the lack of presuit notice meant that there were no damages, and the court dismissed the case. That is not the situation here. The asserted patents in this case are not expired and Defendants are now on notice

77:16–17 ("[P]resuit damages should be dismissed with prejudice"), 102:2–5.)

For its part, Plaintiff argues that its failure to plead presuit notice under § 287(b)(2) should not result in the complete dismissal of its § 271(g) claims. I agree with that, and Defendants don't seriously contend otherwise. Thus, Defendants' request (in its motion and proposed order) to dismiss the FAC with prejudice should be denied.

At oral argument, counsel for Defendants suggested that their main concern was limiting the scope of discovery to the time period after they received notice of infringement. (Tr. 76:19–77:7.) I appreciate Defendants' concern, but I do not recommend granting relief not requested in Defendants' motion. There are procedures for dealing with disproportional requests for discovery, and Defendants may utilize them if a dispute arises. Defendants are also free to move for summary judgment at the appropriate time on the issue of presuit damages.

### D.  Whether the Accused Devices are "Made" by a Patented Process

Finally, Defendants contend that the accused remanufactured display assemblies are not "made" by a patented process within the meaning of § 271(g). The term "made" as used in § 271(g) means to "manufacture," and "extends to the creation or transformation of a product, such as by synthesizing, combining components, or giving raw materials new properties." *Momenta Pharms., Inc. v. Teva Pharms. USA Inc.*, 809 F.3d 610, 617 (Fed. Cir. 2015).

Defendants argue that the remanufactured display assemblies are not "made" because the

---

of them.

    Defendants also cite *Seoul Viosys Co. v. P3 Int'l Corp.*, No. 16-6276 (AJN), 2018 WL 4759744, at *10 (S.D.N.Y. Sept. 30, 2018), *aff'd on reh'g*, 2019 WL 3858621 (S.D.N.Y. Aug. 16, 2019), *aff'd*, 810 F. App'x 903 (Fed. Cir. 2020), but the court in that case (1) was not ruling on a motion to dismiss and (2) granted summary judgment on a § 271(g) claim where the undisputed facts showed that all of the accused acts of importation occurred before the defendant received notice of infringement, thus precluding damages. Here, we are not at the summary judgment stage and Defendants are alleged to be ongoing infringers.

asserted patents cover *disassembling* a display, not *making* one.  But it is at least plausible that removing a glass cover on a mobile device (in order to put a new one on) might constitute the transformation of a product sufficient to satisfy § 271(g).  Without further factual development regarding the nature of the accused products, I'm disinclined to conclude as a matter of law that they are not made using the patented process.

Defendants cite the Federal Circuit's opinion in *Bayer AG v. Housey Pharmaceuticals, Inc.*, but that case merely says that "for a product to have been 'made by a process patented in the United States' it must have been a physical article that was 'manufactured' and that the production of information is not covered."  340 F.3d 1367, 1374 (Fed. Cir. 2003).  That case doesn't answer the question here, as the accused display assemblies are physical articles.

Defendants also point to the statutory exclusion of a product otherwise covered by § 271(g) when "(1) it is materially changed by subsequent processes; or (2) it becomes a trivial and nonessential component of another product."  35 U.S.C. § 271(g).  Defendants suggest that refurbishing a glass-less display with new glass constitutes a material change.  However, the "materially changed" provision "involves factual issues not appropriate for resolution in a Rule 12(b)(6) motion."  *Kyowa Hakka Bio, Co. v. Ajinomoto Co.*, No. 17-313, 2018 WL 834583, at *9 (D. Del. Feb. 12, 2018) (citing *Biotec Biologische Naturverpackungen GmbH v. Biocorp, Inc.*, 249 F.3d 1341, 1352 (Fed. Cir. 2001) ("Whether a change in a product is material is a factual determination, and is properly for the trier of fact.")).

Defendants may ultimately be right that the accused display assemblies fall outside the scope of § 271(g), but it is premature to make that determination at the motion to dismiss stage without further factual development.  Accordingly, I do not recommend dismissal on that basis.

9

## IV.   CONCLUSION

For the reasons set forth above, I recommend that Defendants' motion to dismiss (D.I. 17) be DENIED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), (C), Federal Rule of Civil Procedure 72(b)(1), and District of Delaware Local Rule 72.1. Any objections to the Report and Recommendation shall be filed within fourteen days and limited to ten pages. Any response shall be filed within fourteen days thereafter and limited to ten pages. The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court.

The parties are directed to the Court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated October 9, 2013, a copy of which can be found on the Court's website.

Dated: December 9, 2021

                                                                Jennifer L. Hall
                                                UNITED STATES MAGISTRATE JUDGE